# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS GENE MAYFIELD, JR.,<br><br>　　　　　　　　Petitioner,<br><br>　vs.<br><br>L. E. SCRIBNER, Warden, et al.,<br><br>　　　　　　　　Respondents. | Civil No.　　07cv0340-JLS (WMc)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

　　　　This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

## I.

## FEDERAL PROCEEDINGS

　　　　Thomas Gene Mayfield, Jr. (hereinafter "Petitioner"), is a state prisoner proceeding pro se with a First Amended Petition for a Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. (Doc. No. 19.) Petitioner alleges that his right to due process under the California and United States Constitutions has been violated by the finding of unsuitability for parole by the Board of Parol Hearings (hereinafter "Board"), and by the state courts in denying his claims challenging the finding of unsuitability. (First Amended Petition ["FAP"] at 6-8.)

Respondent L. E. Scribner (hereinafter "Respondent") has filed an Answer. (Doc. No. 20.) Respondent contends that Petitioner is not entitled to habeas relief because: (1) the majority of Petitioner's arguments rely on state law only, and therefore fail to state a claim for federal relief; and (2) the adjudication of Petitioner's claims by the state courts was neither contrary to, nor involved an unreasonable application of, clearly established federal law. (Memorandum of Points and Authorities in Support of Answer ["Ans. Mem."] at 9-16.)  Petitioner has filed a Traverse. (Doc. No. 24.)

## II.

## STATE PROCEEDINGS

On May 17, 1985, Petitioner was sentenced to a state prison term of 23 years-to-life following convictions for one count of conspiracy to commit murder while armed with a firearm and three counts of assault with a deadly weapon. (Lodgment No. 1.) Petitioner's minimum parole eligibility date was October 10, 2000. (Lodgment No. 7, Parole Consideration Hr'g Tr. at 1.)

On December 28, 2004, Petitioner was found unsuitable for parole following his second parole suitability hearing, the hearing at issue in this case. (Id. at 48.) During that hearing, the presiding commissioner read a summary of Petitioner's commitment offense into the record, which Petitioner agreed was accurate. (Id. at 10-12.) The summary is as follows:

> The offense was due to a drive-by shooting committed because of gang retaliation. On 8/27/83, Mayfield and other Elm Street Gang members were at a dance in Gardena, California, where members of the Southwest Gang were present. One of the gang members started a fight resulting in the death of one Elm Street Gang member and Mayfield being stabbed in the arm. On 8/30/83, Mayfield and Elm Street Gang members Rosales and Montalvo, a minor, met at Rosales' residence. Mayfield talked about what happened at the dance and said he wanted to go back to Gardena to get revenge against the Southwest Gang. The three left in Montalvo's car. On route, they passed a car occupied by the four victims, Rosa and Leticia Hernandez, whose residence is in the Elm Street area, and who lived with boyfriends, Albert Estrada and Robert Gutierrez, Southwest Gang members. Unable to catch up with the victims' car, the three went to a residence where Rosales got a .3030 rifle. At the residence, Rosales got into the bed of a truck

belonging to Rodriquez with Rodriquez driving, Montalvo in the middle, and Mayfield on the right of the cab. As they drove to the Hernandez residence, Mayfield told Rosales he would tell him when to fire. As they approached the location at 2647 (indiscernible), South Gate, California, all four victims were in front. Mayfield yelled, go for it, fire, at which point Rosales fired several shots. One struck Estrada in the leg causing substantial injury. Another ricocheted and struck Rosa Hernandez in the hip, puncturing an artery and killing her. The other victims were fired upon but not hit. Mayfield was identified as a suspect and his prints were lifted from Rodriquez' truck. He was arrested inside his residence and advised of his rights. He denied that he had been with either of the defendants on 8/30/83, nor in or around Rodriquez' truck. Mayfield agreed to take a polygraph test, the results of which disclosed he was deceptive in his answers.

(Id.)

The Board found that Petitioner was not yet suitable for release on parole because he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Id. at 48.) The Board rested its decision on several factors. First was Petitioner's commitment offense, which the Board found to be dispassionate and calculated, involved several victims, and had a motive which was extremely trivial and "defies logic." (Id. at 48-49, 52.) Other reasons given were Petitioner's denial of his participation in the crimes at the time he was arrested, and the fact that Petitioner was a 20 year-old married adult with a child at the time of the offense who had no business being involved in gang activities. (Id. at 49, 52.) The Board noted Petitioner has a history of assaultive behavior beginning when he was a juvenile in 1976, continuing in 1977 when he was arrested for assault with intent to commit murder, and that he has an escalating pattern of criminal conduct and an unstable social history. (Id.) The Board found Petitioner had not yet sufficiently participated in self-help programs, and noted he had received 14 disciplinary violations while in prison, two of them serious. (Id. at 49-50.) A psychological report placed Petitioner's risk of violence at a moderate level, but concluded there was a need for a longer period of observation and treatment because Petitioner attributes the underlying causes of the offense more to associations and circumstances rather than acknowledging the pattern which led to his conviction. (Id. at 50, 52.)

///

Petitioner challenged the unsuitability finding in a petition for a writ of habeas corpus filed in the San Diego County Superior Court on August 19, 2005, which was denied in a written order. (Lodgment No. 8.) On January 13, 2006, Petitioner filed a habeas petition in the California Court of Appeal presenting the same claims raised here. (Lodgment No. 9.) The appellate court denied the petition on February 2, 2006 in a brief, one-paragraph order. (Lodgment No. 10.) On May 22, 2006, Petition filed a petition for a writ of habeas corpus in the Supreme Court of California, again raising the same claims as are presented here, which was summarily denied on December 20, 2006. (Lodgment Nos. 11-13.)

## III.

## PETITIONER'S CLAIMS

Petitioner claims that his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, and under the California Constitution, were violated by:

(1) The Board's finding of unsuitability for parole because that finding was based on irrelevant information, misapplied criteria and insufficient evidence;

(2) The denial of habeas relief by the state courts because the state courts did not consider all the facts and evidence as required by state law; and,

(3) The Board's failure to duly consider his application for parole. (FAP at 6-8.)

## IV.

## DISCUSSION

For the following reasons, the Court finds that Petitioner is not entitled to habeas relief as to any claim presented.

**A.  Scope of Review**

Title 28, United States Code, § 2254(a), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

As discussed in detail below, the claims presented in the First Amended Petition here were adjudicated on their merits in the state courts. As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2) (West 2006) (emphasis added).

A state court's decision may be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407. An unreasonable application may also be found, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u>

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." <u>Williams</u>, 529 U.S. at 412.

Habeas relief is also available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C.A. § 2254(d)(2) (West 2006). In order to satisfy this provision, Petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B.     Clearly established federal law applicable to Petitioner's claims.

Clearly established federal law provides that Petitioner may demonstrate a procedural due process violation by showing that: (1) a federally-protected life, liberty or property interest exists "which has been interfered with by the State"; and (2) "the procedures attendant upon that deprivation were constitutionally [in]sufficient." Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989). The Supreme Court has recognized a federally-protected liberty interest in the expectancy of release on parole arising from state parole statutes. See Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (recognizing that "the expectancy of release provided in" a Nebraska parole statute "is entitled to some measure of constitutional protection," but emphasizing that the statute "has unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis."); see also Board of Pardons v. Allen, 482 U.S. 369, 377-78 (1987) (holding that mandatory language in Montana parole statute, like the Nebraska statute, created "a presumption that parole will be granted," thereby giving rise to a protected liberty interest).

The Ninth Circuit has applied Greenholtz and Allen to find that mandatory language in the California parole statute "gives rise to a cognizable liberty interest in release on parole," McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002), which is "created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003). The liberty interest in a finding of suitability for parole is created by Cal. Penal Code § 3041, which provides that a parole release date "shall" be set after the prisoner has served his minimum term, unless the Board "determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses,

is such that consideration of the public safety requires a more lengthy period of incarceration" for the prisoner. Cal. Penal Code § 3041(b); McQuillion, 306 F.3d at 902. California has promulgated regulations establishing criteria tending to show suitability and unsuitability for parole, the relative importance of which "in a particular case is left to the judgment of the panel." See Cal. Code Regs., tit. 15, § 2281(c)-(d).

Respondent argues that, irrespective of the state statutes and regulations requiring release on parole unless certain criteria are met, the only clearly established federal law in the context of a state parole hearing is Greenholtz, which provides that an inmate is entitled to an opportunity to be heard and a statement of reasons denying parole, and nothing more. (Ans. Mem. at 12.) Respondent is correct that Greenholtz held that when an inmate is afforded "an opportunity to be heard" at a state parole hearing, and is informed "in what respects he falls short of qualifying for parole," the inmate has been given "the process that is due." Greenholtz, 442 U.S. at 16. However, in Superintendent of the Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the deprivation of a state-created liberty interest in good-time prison custody credits comports with the minimum requirements of due process only when the findings of the prison disciplinary board are supported by some evidence in the record. Id. at 455-56. The Ninth Circuit has held that the "some evidence" standard of Hill is clearly established federal law for AEDPA purposes applicable to state parole proceedings "because 'both directly affect the duration of the prison term.'" Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006) (quoting Jancsek v. Oregon Board of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987)).

The Ninth Circuit has recently reiterated that Hill's "some evidence" standard is clearly established federal law applicable to state parole hearings for AEDPA purposes. Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007). Respondent contends that the holdings of Biggs, Sass and Irons have been called into question by the intervening Supreme Court opinion in Carey v. Musladin, 549 U.S. 70 (2006), which Respondent contends clarified that when the Supreme Court has not addressed a particular issue or applied a test to a particular factual situation, there is no clearly established federal law applicable to the issue. (Ans. Mem. at 13.) Thus, because

the "some evidence" standard of Hill has not been applied to parole hearings by the United States Supreme Court, Respondent contends that AEDPA precludes its application here. (Id.) Respondent acknowledges that this argument has been rejected by a panel of the Ninth Circuit, but argues that because that decision is currently pending before an en banc panel, this Court is free to hold that Musladin overruled Biggs, Sass and Irons. See Hayward v. Marshall, 512 F.3d 536, 542-38 (9th Cir. 2008), rehearing en banc granted, 527 F.3d 797 (9th Cir. May 16, 2008). The Court need not determine the exact contours of federal due process protections afforded to state prisoners in parole hearings. As will be seen, even under the holdings of Irons, Sass and Biggs that the "some evidence" standard of Hill represents clearly established federal law expounding the due process requirements to which Petitioner is entitled, his due process rights were not violated in connection to his parole hearing.

The Sass Court, interpreting Hill, held that due process requirements are satisfied if "some evidence" exists in the record to support the parole board's decision. Sass, 461 F.3d at 1128. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. (quoting Hill, 472 U.S. at 455-56). The Ninth Circuit has also held that "the evidence underlying the board's decision must have some indicia of reliability." Biggs, 334 F.3d at 915 (quoting Jancsek, 833 F.2d at 1390).

**C.     Petitioner is not entitled to habeas relief.**

Petitioner claims his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, and under the California Constitution, were violated by: (1) The Board's finding of unsuitability for parole because that finding was based on irrelevant information, misapplied criteria and insufficient evidence (claim one);  (2) the denial of his claims by the state superior and appellate courts because those courts did not consider all the facts and evidence in the manner required by state law (claim two); and, (3) the Board's failure to duly consider his application for parole (claim three). (FAP at 6-8.)

To the extent any aspect of these claims rest solely on the application of California's Constitution, laws or regulations, without implicating federal due process, Respondent is correct that they do not present a cognizable claim. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)

(holding that federal habeas relief does not lie for errors of state law). However, as set forth above, Petitioner has a state-created, federally-protected liberty interest arising from the expectancy of release on parole created by state law. Many of the arguments presented by Petitioner in support of his claims, both here and in the state courts, necessarily rely on the allegedly improper application of the state laws and regulations which inform and constrain the Board's discretion in making a finding of parole suitability. It is in fact these very constraints which create the federally-protected liberty interest at stake. Greenholtz, 442 U.S. at 12; Allen, 482 U.S. at 377-78. However, Petitioner's federal due process rights are adequately protected if "there is any evidence in the record that could support the conclusion reached by the [parole] board." Sass, 461 F.3d at 1128 (quoting Hill, 472 U.S. at 455-56). As set forth in detail below, Petitioner argued in the state courts, as he does here, that the "some evidence" standard was not met by the Board's decision, and the state courts erred in finding the "some evidence" standard was satisfied. Because those claims were denied on their merits, Petitioner is entitled to federal habeas relief only if the adjudication of his claims by the state courts was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts.

Petitioner presented his claims to the California Supreme Court in a habeas petition in the same manner as they are presented here. (Lodgment No. 11.) That petition was denied in an order which stated: "Petition for writ of habeas corpus is DENIED." (Lodgment No. 13.) Petitioner presented the same claims to the appellate court in a habeas petition. (Lodgment No. 9.) The appellate court denied that petition in an order which stated in full:

> The court has read and considered the petition for writ of habeas corpus filed January 13, 2006. The petition is denied. The record submitted reflects some evidence to support the decision of the Board of Prison Terms. Accordingly, that decision is supported, and the superior court correctly denied the habeas corpus petition filed in that court. (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1071, 1080; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 664-665.)

(Lodgment No. 10, In re Mayfield, Case No. B188415, order at 1.)

The superior court found there was "some evidence" to support the Board's six findings indicating unsuitability for parole. (Lodgment No. 8, In re Mayfield, No. BH003552, order at

1-3.) Specifically, the court found the record contained sufficient evidence to support the findings that: (1) the crime was carried out in a dispassionate manner; (2) involved multiple victims; (3) the motive was trivial; (4) Petitioner had a previous record of violence; (5) Petitioner had an unstable social history; and (6) Petitioner could benefit from additional self-help programming. (Id. at 2-3.) The superior court rejected Petitioner's argument that the Board failed to consider factors tending to favor suitability for parole. (Id. at 3.)

In Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991), the Court adopted a presumption which gives no effect to unexplained state court orders but "looks through" them to the last reasoned state court decision. The appellate court order denying the claims on the merits in effect adopted the reasoning of the superior court, and the two courts essentially relied on the same reasoning, that "some evidence" supports the Board's findings. Thus, the Court will look through the silent denial by the state supreme court to the appellate and superior court orders.

For the following reasons, the Court finds there is "some evidence" in the record to support the findings of both the Board and the state courts that Petitioner would pose an unreasonable risk to the public safety if released and that this evidence has sufficient indicia of reliability. First is Petitioner's commitment offense. The Board found the offense involved a premeditated shooting of multiple victims on Petitioner's command, which the Board characterized as very dispassionate and very calculated. (Lodgment No. 7, Parole Hr'g Tr. at 48, 52.) Further, the Board found the reason for the shooting "defies logic," and was trivial because it was gang-related, despite the fact that Petitioner was a 20 year-old adult at the time with a wife and child to care for with no excuse for still engaging in gang-related activities. (Id. at 49, 52.) These findings satisfy the criteria under California law for a finding of unsuitability for parole based on the commitment offense. See Cal. Code Regs., tit. 15, § 2281(c)(1).[1]

---

[1] Cal. Code Regs., tit. 15, § 2281(c)(1) provides that "Circumstances tending to indicate unsuitability include: (1) Commitment offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include: (A) Multiple victims were attacked, injured or killed in the same or separate incidents. (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder. (C) The victim was abused, defiled or mutilated during or after the offense. (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. (E) The motive for the crime is inexplicable or very trivial in relation to the offense."

Petitioner acknowledges that the California regulations provide that a finding of unsuitability can be predicated on a finding that the commitment offense was "especially heinous, atrocious or cruel," and he acknowledges that, in making such a finding, the Board can consider whether the offense was carried out "in a dispassionate and calculated manner," "involved multiple victims," and "whether the motive for the crime was inexplicable or trivial in relation to the offense." (Pet. Mem. at 11.) He argues, however, that the Board cannot independently rely on the findings of multiple victims, trivial motive and dispassionate acts to make the ultimate conclusion he is unsuitable for parole. (Id. at 12.) Rather, the Board must use those factors to make an independent judgment that Petitioner would pose an unreasonable risk to the public safety if released. See In re Lee, 142 Cal.App.4th 1400, 1408 (Cal.Ct.App. 2006) (noting that ultimate determination is whether, after weighing the factors tending to show suitability and unsuitability, the Board determines whether the prisoner would pose an unreasonable risk to pubic safety), citing In re Rosenkrantz, 29 Cal.4th 616, 686 (2002).

The Board's finding that the facts of Petitioner's commitment offense tend to demonstrate unsuitability are supported by "some evidence" in the record. Petitioner admitted during the parole hearing that he and other members of his gang, at Petitioner's behest, drove to the residence of two members of another gang for the purpose of retaliating because a member of the other gang had stabbed Petitioner on a prior occasion. (Lodgment No. 7, Parole Consideration Hr'g Tr. at 10-12, 38.) When they arrived at the residence, the two gang members were standing out front with their girlfriends. (Id.) Although Petitioner was childhood friends with one of the women, he nevertheless directed his fellow gang member to shoot at the four people, seriously injuring one of the rival gang members and killing one of the women, his childhood friend. (Id.) Although Petitioner told the Board his intent was for his fellow gang member to shoot over the heads of their victims and to just scare them (id. at 38-39), the Board did not find Petitioner's explanation to be credible. (Id. at 52-53.) In any case, the act of directing a fellow gang member to shoot a rifle at a group of people in retaliation for being stabbed, even with the intent just to scare them, is a dispassionate and calculated act of violence against multiple innocent victims. This is particularly true in light of the undisputed fact that

Case 3:07-cv-00340-JLS-WMC   Document 25   Filed 12/03/08   PageID.1262   Page 12 of 18<sub>/</sub>

Petitioner was in a position at the time he ordered his fellow gang member to shoot to see that innocent victims were in the line of fire, including his own childhood friend.

The findings by the Board that the crime was dispassionate and calculated, that multiple victims were involved, and that the motive was inexplicable or trivial, are all supported by evidence in the record. Petitioner argues such findings are inherent in all second degree murders, and are not relevant to the current risk he poses to the safety of the public if released. (Pet. Mem. at 11-12.) However, the factors relied on by the Panel are not irrelevant to Petitioner's current safety risk, particularly the dispassionate and calculated nature of the murder and the assault on innocent victims for a trivial reason. Neither are they inherent in all second degree murders, because not all second degree murders involve the death of an innocent bystander during a retaliatory drive-by shooting where the defendant ordered a confederate to shoot into a group of people which contained one of the defendant's childhood friends. The Board clearly was within its discretion to find such a crime dispassionate beyond other types of second degree murders, and to find such a calculated and dispassionate act especially heinous, atrocious or cruel, and has some nexus to Petitioner's current risk to society. Further, Petitioner admitted to the facts upon which these findings were based, they have sufficient indicia of reliability. These findings provide "some evidence" Petitioner would pose an unreasonable risk to the public safety if released on parole, particularly in conjunction with the other findings by the Board discussed below.

The Board next made findings regarding Petitioner's previous record of violence. The Board noted Petitioner has an extensive and escalating history and pattern of criminality and assaultive behavior beginning when he was a juvenile. (Lodgment No. 7, Parole Consideration Hr'g Tr. at 49, 52.) Petitioner admitted he joined a gang at age twelve or thirteen, and spent a year in a juvenile detention facility, when he would otherwise have been attending eleventh grade, for assault with intent to commit murder after stabbing someone during a gang altercation. (Id. at 14-18.) This finding is consistent with the applicable regulations, which provide that a circumstance tending to show unsuitability exists when: "The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner

-12-   07cv0340<sub>/</sub>

demonstrated serious assaultive behavior at an early age." Cal. Code Regs., tit. 15, § 2281(c)(2). Because Petitioner admitted the facts underlying these findings, they have sufficient indicia of reliability.

Petitioner argues his most recent prison disciplinary infraction was defensive in nature, not assaultive, and that although he arguably "had" an escalating pattern of assaultive behavior when he was younger, he no longer "has" such a pattern. (Pet. Mem. at 13-15.) He contends that, although he was arrested many times before the commitment offense, those arrests took place thirty years ago and there is no nexus between his past assaultive behavior and his current risk to society. (Id.; Traverse at 14-15.) As set forth above, the applicable California regulations provide discretion to the Board to take into consideration assaultive behavior at an early age, which Petitioner admits he exhibited. California has indicated through its regulations that such behavior is a factor to consider in determining his current risk.  In addition, it is undisputed that Petitioner's assaultive behavior continued to escalate, not just after his juvenile offenses, but even after he was sent to prison as a result of the current offense, in that he admitted engaging in gang activity while in prison.  (Lodgment No. 7, Parole Consideration Hr'g Tr. at 33.) Although Petitioner seeks to have such behavior characterized as defensive rather than assaultive due to the nature of gang life in prison, which he contends sometimes requires proactive measures to protect oneself, his history of assaultive behavior is a relevant and acceptable factor for the Board to consider in determining Petitioner's current risk to public safety.  His argument that he no longer "has" an increasing pattern of assaultive behavior is unpersuasive.

The Board next found Petitioner had an unstable social history marked by unstable relationships and gang affiliation. (Lodgment No. 7, Parole Consideration Hr'g Tr. at 49, 52.) Petitioner admitted he joined a gang at a young age and continued to give loyalty to the gang over his responsibility to his wife and child even as an adult. (Id. at 20.) He also admitted he continued his gang activity for at least another five years while incarcerated on the instant offense. (Id. at 33.) He explained he "felt disloyalty to where he came from," which included his family, and noted that his father was an alcoholic and a bad man. (Id. at 16.) The Board's finding is supported by the record and is grounded in the regulations, which provide that a

circumstance tending to show unsuitability exists when: "The prisoner has a history of unstable or tumultuous relationships with others." Cal. Code Regs., tit. 15, § 2281(c)(3). Because Petitioner admitted these facts, they have sufficient indicia of reliability.

Petitioner argues he in fact has maintained a stable social history throughout his life, and has strong and stable relationships with his fiancé, his mother, two sisters, a cousin and his own son. (Pet. Mem. at 15-16; Traverse at 16.) Petitioner submits letters from these individuals espousing their support and their willingness to maintain a relationship with him. (FAP Exs. 5-10.) Even assuming, however, the Board put too much emphasis on Petitioner's past social history, including his gang membership and his unstable relationships with his father, wife and son at the time of the murder, and not enough emphasis on his current social situation, there remains "some evidence" in the record to support the Board's ultimate finding of unsuitability based on the factors discussed above.

The Board next found Petitioner had received 14 disciplinary violations while in prison, the last one in 1994, eleven years before the parole hearing. (Lodgment No. 7, Parole Consideration Hr'g Tr. at 50.) Petitioner admitted he has suffered 14 disciplinary violations while incarcerated on his commitment offense. (Id. at 25.) Two of the violations were for serious misconduct, including possessing a stabbing instrument in 1992 and fighting in 1994. (Id. at 35-36, 50.) This finding is supported by some evidence which has sufficient indicia of reliability and is grounded in the regulations. See Cal. Code Regs., tit. 15, § 2281(c)(6) (identifying a circumstance supporting a finding of unsuitability where: "The prisoner has engaged in serious misconduct in prison or jail."). Petitioner argues this factor actually works in his favor as it shows he has remained disciplinary free for the past fourteen years. (Pet. Mem. at 18-19; Traverse at 15.) He contends he entered prison with an initial classification score of 112, that it reached as high as 204 due to his institutional misconduct, and its level of 105 at the time of the parole hearing, and its current level of 81, show a drastic decline and a complete termination of criminal conduct since 1994 due to his successful rehabilitation. (Id.)

Petitioner correctly states the California regulations provide that suitability for release can be shown by positive institutional behavior. See Cal. Code Regs., tit. 15, § 2281(d)(9)

(identifying a circumstance tending to show suitability for release where: "Institutional activities indicate an enhanced ability to function within the law upon release.") However, the regulations also provide for discretion regarding the weight the Board gives such factors. See Cal. Code Regs., tit. 15, § 2281(c) ("the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel.") The Board in fact considered Petitioner's classification score as a positive factor. (Lodgment No. 7, Parole Consideration Hr'g Tr. at 51.) The psychological report noted Petitioner has exhibited his recent crime-free behavior in a controlled, custodial setting, and recognized as a risk factor his return to his old neighborhood and associations. (Id. at 28.) Petitioner has not shown the Board failed to take into consideration his recent disciplinary-free institutional behavior, and has failed to show this factor was considered only in a negative light or given too much negative weight by the Board. In any case, in light of the other factors discussed above, Petitioner has not shown he would have been found suitable for release had the Board given more weight to his more recent prison disciplinary record. "Some evidence" exists to support the Board's ultimate finding that Petitioner poses a current risk irrespective of the weight given by the Board to this factor.

Finally, the Board found Petitioner "has not yet sufficiently participated in beneficial self-help" programs. (Lodgment No. 7, Parole Consideration Hr'g Tr. at 49.) Petitioner argued to the Board that he has made progress in his self-help programming. (Id. at 40-42.) However, the Board's finding is supported by the psychological report, which concluded Petitioner attributes the underlying causes of the offense "more to associations and circumstances rather than acknowledging the pattern which led" to his conviction, and encourages him to do more self-exploration. (Id. at 50.) Thus, there is "some evidence" to support the finding that Petitioner would benefit from additional self-help programming.

Petitioner argues the psychological report merely "encouraged" him to do more self-help programming, and he lists the numerous self-help programs he has completed and states he has participated in every self-help program available to him. (Pet. Mem. at 17-18; Traverse at 16-17.) He provides numerous exhibits supporting this contention, including laudatory chronos and

1 certificates of participation in various programs. (FAP Exs. 14-69.) However, as with his
2 contentions regarding his social history and recent institutional behavior, even assuming this
3 factor is not supported by sufficient evidence in the record, the remaining factors, which include
4 the dispassionate and calculated nature of the commitment offense, the multiple victims, and his
5 escalating assaultive behavior beginning at an early age, are adequately supported by the record.

6 Petitioner argues it is now clear the Board is relying on static factors to deny him parole,
7 particularly in light of the fact that he has remained disciplinary free for nearly fourteen years
8 yet is still considered a risk to society. (Traverse at 15-16.) He argues that the psychological
9 report placed his risk of dangerousness at a low level, and that he cannot at this time be
10 considered to pose an unreasonable right of danger to society if released. (Pet. Mem. at 37-38.)

11 The Ninth Circuit has indicated that the "continued reliance in the future on an
12 unchanging factor, [such as] the circumstances of the offense and conduct prior to imprisonment,
13 runs contrary to the rehabilitative goals espoused by the prison system and could result in a due
14 process violation." Biggs, 334 F.3d at 915-17. However, as discussed above, the Board here
15 did not rely on the static and unchanging factors arising before to Petitioner's incarceration.
16 Rather, it considered the undisputed fact that Petitioner had engaged in gang activity and
17 criminal behavior while incarcerated. Moreover, the Board considered factors after Petitioner's
18 fourteen-year disciplinary-free period. The psychological report, for example, did not place
19 Petitioner's risk of violence at a "low" level (as characterized by Petitioner), but at a "moderate"
20 level. The report noted that Petitioner's recent demonstration of greater self-control was
21 exhibited in a confined setting, but that risk factors included his return to Los Angeles County
22 and the resumption of his old friendships. (Lodgment No. 7, Parole Consideration Hr'g Tr. at
23 28.) Although Petitioner indicated he would not seek to resume his old friendships, he said he
24 intended to return to his old neighborhood, which the psychological report concluded could lead
25 to "a cycle of acting out" with possible negative outcomes. (Id.) The Board took these
26 considerations into account along with Petitioner's parole plans, the recommendation in the
27 psychological report that he continue his self-help programming, and the finding that Petitioner
28 has not yet been forthright when he says he only intended for his fellow gang member to shoot

over the heads of the victims to scare them. Thus, Petitioner is incorrect that the Board relied only on static factors.

Because there is "some evidence" in the record to support the Boards' findings and the evidence has sufficient indicia of reliability, the Court finds there is sufficient evidence in the record to support the Board's determination that Petitioner's release unreasonably endangers public safety. Therefore, no due process violation occurred. Irons, 505 F.3d at 851; Sass, 461 F.3d at 1128; Biggs, 334 F.3d at 915; Jancsek, 833 F.2d at 1390. Accordingly, the Court finds the appellate court's adjudication of Petitioner's due process claim, on the basis that the parole board's unsuitability determination was supported by "some evidence," is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is therefore not entitled to habeas relief as to any claim presented in the First Amended Petition.

## V.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **January 5, 2009**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

\\\
\\\
\\\
\\\
\\\
\\\
\\\

1      **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 26, 2009**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v.Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**DATED: December 3, 2008**

                                                _____
                                                **Hon. William McCurine, Jr.**
                                                **U.S. Magistrate Judge**
                                                **United States District Court**